# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

STEVEN RAY THACKER,                )
                                   )
                  Petitioner,      )
                                   )
v.                                 )        Case No. 06-CV-0028-CVE- FHM
                                   )
RANDALL WORKMAN,[1] Warden,        )
                                   )
                  Respondent.      )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner, Steven Ray Thacker, is a death row prisoner, currently incarcerated in the State of Tennessee. Thacker, who appears through counsel, challenges his conviction and sentence in Mayes County District Court Case No. CF-99-305 (Dkt. # 16). Respondent filed a response (Dkt. # 21) to the petition, and Thacker filed a reply (Dkt. # 26) to the response. With leave of Court, Thacker filed an amended petition (Dkt. # 36). Respondent filed a response to the amended petition (Dkt. # 37), and Thacker filed a reply (Dkt. # 41). The state court record has been produced.[2] See Dkt. # 35. The Court considered all of these materials in reaching its decision. For the reasons discussed below, the Court concludes the petition, as amended, should be denied.

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the **Court Clerk** shall be directed to substitute Randall Workman for Marty Sirmons as the party respondent.

[2]     References to the transcript of the in camera conference held in state court on December 2, 2002, between Thacker and trial counsel, and thereafter with the judge and counsel, shall be referred to as "In Camera Trans. at ___;" references to the plea hearing transcript shall be referred to as "Plea Hr'g Trans. at __;" references to the sentencing trial transcript shall be referred to as "Tr. Trans. Vol. _ at ___;" references to the formal sentencing transcript shall be referred to as "Sent. Trans. at ____." The original state court record for Mayes County District Court Case No. CF-99-305 shall be identified as "O.R. at ___."

## BACKGROUND

### I.      Factual Background

Most of the relevant facts are not disputed. Thacker provided much of the information concerning the details of the crimes through his videotaped confession. Likewise, there is little dispute concerning Thacker's mental health history. The factual information summarized below is, however, relevant to the legal issues raised by Thacker in this habeas case.

### A.      The murder and accompanying crimes

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. Following review of the record, including the trial transcripts and evidence, this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals (OCCA) in its order resolving petitioner's direct appeal is adequate and accurate. Therefore, the Court adopts the following factual summary as its own:

> On December 23, 1999, Appellant murdered Laci Dawn Hill. Appellant had responded to an advertisement Ms. Hill made regarding a pool table she had for sale. After calling Ms. Hill and being given directions to her Bixby home, Appellant arrived with the intention of robbing her. When Ms. Hill allowed Appellant admission into her home, he pulled a knife and demanded money. Ms. Hill was able to convince Appellant she had no money there, but could get some from an ATM machine. So Appellant forced the victim into his car with a knife. Rather than going to the ATM, Appellant took Ms. Hill to a ramshackle cabin in the country, where he proceeded to rape her.
>
> According to Appellant's admissions, he then left Ms. Hill in the cabin, tied to a chair with plastic zip ties. However, he became nervous he would be caught when Ms. Hill escaped, so he returned to the cabin and began strangling Ms. Hill with his hands and/or a piece of cloth. When this proved unsuccessful - due to Ms. Hill's valiant struggle to fend him off - Appellant stabbed the victim twice in the chest with his knife.
>
> Appellant left Ms. Hill's lifeless body on the cabin floor, covered by box springs and several mattresses. Authorities found her body six days later. Ms. Hill was disrobed from the waist down, except for one sock. Her sweatshirt and shirt had been pushed

up over her head, and her bra, which clasped in the front, had been undone. Her sweat pants and panties were found near her body. The medical examiner found the presence of sperm in Ms. Hill's vagina. He determined Ms. Hill had been wearing panties at or very close to the time of her death and that the panties had remained on her body for several hours after her death.

After killing Ms. Hill, Appellant proceeded to go on a horrifying crime spree. He used credit and debit cards he had stolen from Ms. Hill to purchase Christmas gifts for his family. Concerned authorities were looking for him, he fled to Missouri, where he car-jacked a family (an elderly woman, younger woman, and a child) FN2 three days after Christmas. A massive manhunt followed and Appellant was nearly caught several times. He hid out in the woods for a couple of days and broke into several homes, but was somehow able to stay ahead of police. During one of the burglaries, the homeowner, Forrest Boyd, returned. Appellant killed Boyd by stabbing him several times in the back.

> FN2. Appellant reportedly pushed the female driver out of the car, and drove off with the elderly woman and the young child. He later let them go.

Appellant fled in Boyd's car and made it to Tennessee before the car broke down. He called a towing company. The unlucky driver, Roy Patterson, also wound up being stabbed and killed by Appellant, after the credit card Appellant used to pay for the tow showed it had been stolen. An arrest followed soon after. Appellant has since been tried and convicted of murdering Patterson.

On December 2, 2002, Appellant pled guilty to crimes of First Degree Murder, Kidnapping, and First Degree Rape. He admitted taking Ms. Hill from her home by force, raping her, strangling her, stabbing her, and killing her on December 23, 1999.

Thacker v. State, 100 P.3d 1052, 1054-55 (Okla. Crim. App. 2004).

**B.     Thacker's mental health history**

Thacker's mental health history was a central issue in the state court proceedings. Thus, a short summary here is appropriate. Thacker was first diagnosed with bipolar disorder in 1995 at Prestera Mental Health Facility in Huntington, West Virginia. Tr. Trans. Vol. I at 167.   His symptoms included mood swings, irritability, heightened activity levels, impulsive behavior, and episodes of depression. Id. at 169-70. He was prescribed the mood stabilizing drug Lithium, but

stopped taking the medication after about four months. Id. at 184. The state did not challenge Thacker's diagnosis of bipolar disorder. In addition, uncontested evidence was presented at Thacker's sentencing hearing that he suffered a great deal of childhood trauma, including abuse, abandonment, and rejection, which led to a substance abuse problem in his early teens and contributed to his mental health problems. Id. at 173-75, 177. Thacker admits that his "fear of abandonment, coupled with the debilitating effects of bipolar disorder . . . set the backdrop for [his] crimes." Dkt. # 16 at 14.

## II.    Procedural history

### A.    Guilty Plea

An amended Bill of Particulars filed June 12, 2002, alleged three aggravating circumstances: (1) Thacker committed the murder for the purpose of avoiding arrest; (2) Thacker posed a continuing threat to society; and (3) the murder was especially heinous, atrocious, or cruel, all in support of the State's request for a death sentence on Count I.  O.R. at 16.  On December 2, 2002, Thacker waived his right to a jury trial and entered a blind plea[3] of guilty to First Degree Murder (Count I), Kidnapping (Count II), and First Degree Rape (Count III). Immediately before the plea hearing, a private conference concerning his decision to plead guilty was held between Thacker and his trial counsel, followed by a conference with the judge and counsel. A transcript of these two conferences was made part of the record. See In Camera Trans. at 2. At the plea hearing, Thacker plead guilty to all three counts and waived his right to a second stage (punishment) jury trial. He agreed to a non-jury trial on the sentencing issues before the Honorable James D. Goodpaster. Plea Hr'g Trans. at

---

[3]    A blind plea is defined as a "guilty plea made without the promise of a concession from either the judge or the prosecutor." Allen v. Mullin, 368 F.3d 1220, 1227 n.8 (10th Cir. 2004) (quoting Black's Law Dictionary 1171 (7th ed. 1999)).

28. Thacker was represented by Oklahoma Indigent Defense System ("OIDS") attorneys Silas Lyman[4], Lynn Burch and Gretchen Mosley at the plea hearing and non-jury trial.

**B.     Sentencing trial**

The non-jury second stage trial was held December 17-19, 2002. At the conclusion of the evidence, Judge Goodpaster found the existence of all three aggravating circumstances, found the aggravating circumstances outweighed the mitigating factors, and found that Thacker should receive a death sentence on Count I. Tr. Trans. Vol. II at 394-97. Thacker also received a ten (10) year sentence for Count II, and fifty (50) years for Count III, to be served consecutively. Sent. Trans. at 3-4. When he imposed the sentence, the trial judge advised Thacker of his right to appeal. Id. at 4. Thacker did not move to withdraw his guilty plea during the ten-day period following pronouncement of his Judgment and Sentence, and did not otherwise perfect a certiorari appeal in state court. See Rule 4.2, Rules of the Court of Criminal Appeals (requiring the defendant to file an application to withdraw plea of guilty within ten (10) days from the date of the pronouncement of the Judgment and Sentence in order to commence an appeal from any conviction on a plea of guilty).

**C.     Direct appeal (Mandatory Sentence Review)**

Thacker filed a direct appeal to the OCCA in Case No. D-2003-21. Represented by OIDS attorney Gretchen Mosley on appeal, petitioner raised the following two (2) propositions of error:

Proposition I:     Appellant's death sentence should be vacated or modified on grounds that aggravating circumstances were not charged in an information or indictment, subject to adversarial testing in a preliminary hearing, not determined to probably exist by a neutral and detached magistrate, and the district court never acquired jurisdiction over them.

---

[4]     Silas Lyman was lead counsel. He handled most of the questioning and arguments during Thacker's proceedings.

> Proposition II: Oklahoma's interpretation of the heinous, atrocious, or cruel aggravating circumstance violates the Eighth and Fourteenth Amendments by failing to properly channel the factfinder's discretion in imposing the death penalty.

See Brief of Appellant in OCCA Case No. D-2003-21.

On October 21, 2004, the OCCA affirmed Thacker's conviction and death sentence. Thacker, 100 P.3d at 1052.  The United States Supreme Court denied his subsequent petition for writ of certiorari on May 7, 2005. Thacker v. Oklahoma, 544 U.S. 911 (2005).

### D.    Post-conviction proceedings

Thacker filed his first application for post-conviction relief on February 14, 2005, in OCCA Case No. PCD-2003-137. Represented by OIDS attorney Vicki Werneke, he presented the following three (3) grounds for relief:

> Proposition One: Because trial counsel failed to present compelling and relevant mitigating evidence at the sentencing hearing, Mr. Thacker was deprived of his right to a fair sentencing determination in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Oklahoma Constitution.

> Proposition Two: When the trial court conducted the required balancing of aggravating and mitigating circumstances, the trial judge considered inappropriately in the balance the victim impact evidence in violation of the Eighth Amendment.

> Proposition Three: Appellate counsel's performance on direct appeal was deficient and deprived Mr. Thacker of full and fair appellate proceedings in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

See Application for Post-Conviction Relief in OCCA Case No. PCD-2003-137.  All requested relief was denied on September 13, 2005. Thacker v. State, 120 P.3d 1193 (Okla. Crim. App. 2005).

Thacker's second application for post-conviction relief was filed on September 15, 2006, in OCCA Case No. PCD-2006-990. Represented by attorney Robert Jackson, he raised the following propositions of error:

Proposition One:     Mr. Thacker was denied due process of law because the trial court considered information Mr. Thacker was unaware of and had no opportunity to deny or explain.

Proposition Two:     Mr. Thacker's execution would violate the Eighth Amendment prohibition against cruel and unusual punishment because he suffered from a severe mental disorder or disability at the time he committed his crimes.

Proposition Three:   Appellate counsel's performance on direct appeal was deficient and deprived Mr. Thacker of full and fair appellate proceedings in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Proposition Four:    Post-conviction counsel was ineffective.

See Application for Post-Conviction Relief in OCCA Case No. PCD-2006-990.

Again represented by attorney Robert Jackson, petitioner filed a third application for post-conviction relief on December 11, 2006, in OCCA Case No. PCD-2006-1273, raising the following issue:

Proposition One:     The trial court's refusal to consider Mr. Thacker's mental illness as a mitigating factor when it sentenced him to death violated his Eighth and Fourteenth Amendment rights.

On August 31, 2007, in an unpublished opinion, the OCCA denied relief on both the second and third applications for post-conviction relief. See Dkt. # 36, attachment 1, Opinion Denying Second and Third Applications for Post-Conviction Relief in Case Nos. PCD-2006-990 and PCD-2006-1273.

7

### E.    Federal habeas corpus

Thacker initiated this federal habeas corpus action by filing a motion for appointment of counsel on January 17, 2006.  Dkt. # 1.  He filed a petition on September 8, 2006. Dkt. # 16. On September 29, 2006, he filed a motion to hold this matter in abeyance pending the OCCA's resolution of his second application for post-conviction relief . Dkt. # 17. Thacker conceded in the motion that his September 8, 2006, petition contained unexhausted claims. Id. at 2. On July 16, 2007, the Court granted a stay of these proceedings pending exhaustion[5] of claims in state court. Dkt. # 30. By Order entered September 5, 2007, the Court lifted the stay on these habeas corpus proceedings, and granted Thacker's request to file an amended petition. Dkt. # 32. Thacker filed an amended petition,  incorporating all facts, arguments and exhibits attached to his initial petition and addressing issues considered by the OCCA in post-conviction proceedings related to grounds three and four. See Dkt. # 36 at 1. Respondent filed a response (Dkt. # 37), and Thacker filed a reply to the response (Dkt. # 41). The petition, as amended, identifies the following ten (10) grounds for relief:

| | |
|---|---|
| Ground One: | Material misrepresentations and critical omissions by Mr. Thacker's trial counsel during their attempts to persuade him to enter a blind plea resulted in an unknowing and involuntary plea, and their failure to file the proper and necessary paperwork denied him his right to appeal. |
| Ground Two: | Mr. Thacker was denied equal protection and due process of law because the Oklahoma courts failed to follow established procedures to determine whether he desired an appeal. |

---

[5]    Despite the stay granted by this Court and Thacker's two additional post-conviction proceedings in state court, several of the claims presented in this habeas action remain unexhausted.

Ground Three:    Mr. Thacker was denied due process of law because the trial court considered information of which Mr. Thacker was unaware and had no opportunity to deny or explain.

Ground Four:    Mr. Thacker's execution would violate the Eighth Amendment prohibition against cruel and unusual punishment because he suffered from a severe mental disorder or disability at the time he committed the murder.

Ground Five:    Trial counsel's failure to present compelling and relevant mitigating evidence at the sentencing hearing deprived Mr. Thacker of his right to a fair sentencing determination in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Ground Six:    The victim impact evidence which explicitly called for Mr. Thacker's execution exceeded what is constitutionally permissible and violated Mr. Thacker's right to a fundamentally fair sentencing proceeding as guaranteed by the Fifth, Eighth, and Fourteenth Amendments.

Ground Seven:    When conducting the required balancing of aggravating and mitigating circumstances, the trial court considered inappropriately in the balance the victim impact evidence in violation of the Eighth Amendment.

Ground Eight:    Oklahoma's interpretation of the heinous, atrocious, or cruel aggravating circumstance violates the Eighth and Fourteenth Amendments by failing to properly channel the fact finder's discretion in imposing the death penalty.

Ground Nine:    The accumulation of error in these proceedings demonstrates Mr. Thacker was denied his fundamental right to a fair sentencing proceeding, the right to be free from cruel and unusual punishment, and the right to due process of law.

Ground Ten:    Mr. Thacker's execution would violate the Eighth Amendment because he is incompetent to be executed.

See Dkt. ## 16, 36.

## **GENERAL CONSIDERATIONS**

### I.      **Exhaustion**

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the Court must first consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity").  In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal. Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion. Coleman, 501 U.S. at 735 n.1 (citations omitted). Also, the Court has the discretion to ignore the exhaustion requirement altogether and deny the petition on the merits if the claim lacks merit. Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009); 28 U.S.C. § 2254(b)(2). Respondent contends that many of Thacker's claims are unexhausted. Therefore, the Court will address the threshold question of exhaustion as it arises in each ground.

### II.      **Procedural Bar**

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an

10

issue on an adequate and independent state procedural ground. Coleman, 501 U.S. at 750; Medlock v. Ward, 200 F.3d 1314, 1322-23, 1028 (10th Cir. 2000). A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d 768 (10th Cir. 1998).  If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate."  Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)). To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the defaulted claim were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright, 433 U.S. at 91.

## III.    Standard of Review - AEDPA

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007).  Under AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. Alverson v. Workman, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing Snow, 474 F.3d at 696). When a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established[6] Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[6]    A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

proceeding." See 28 U.S.C. § 2254(d)(1)(2); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

The first step in applying § 2254(d)(1) standards is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to or involved an unreasonable application of the Supreme Court law. Id. at 1018. When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002).

Application of § 2254(d)(2) requires the Court to review any factual findings of the state court to ascertain whether they were unreasonable in light of the evidence presented at trial. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, - - U.S. - -, 130 S.Ct. 841, 849 (2010) (citing Williams, 529 U.S. at 410). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Thacker's habeas proceedings commenced well after the effective date of AEDPA. Therefore, to the extent Thacker's claims are cognizable in a federal habeas corpus proceeding and

not procedurally barred or justify <u>de</u> <u>novo</u> review, those claims shall be reviewed pursuant to §

2254(d).

## **GROUNDS FOR RELIEF**

As an initial matter, the Court notes that Thacker's guilty plea narrows the issues he may

now raise. The Tenth Circuit has stated:

> Once a defendant has pled guilty, the only non-jurisdictional avenue for challenging
> his conviction is to claim that his plea was not knowing and voluntary. <u>Mabry v.</u>
> <u>Johnson</u>, 467 U.S. 504, 508-09, 104 S.Ct. 2543, 2546-48, 81 L.Ed.2d 437 (1984);
> <u>Barker v. United States</u>, 579 F.2d 1219, 1225-26 (10th Cir. 1978). Performance by
> defense counsel that is constitutionally inadequate can render a plea involuntary.
> <u>Varela v. Kaiser</u>, 976 F.2d 1357 (10th Cir. 1992), *cert denied*, 507 U.S. 1039, 113
> S.Ct. 1869, 123 L.Ed.2d 489 (1993).

<u>Romero v. Tansy</u>, 46 F.3d 1024, 1033 (10th Cir. 1995).   The proper standard for judging attorney

performance is a two-pronged test requiring petitioner to show that counsel's performance was

deficient because it fell below an objective standard of reasonableness, and petitioner was prejudiced

by the deficiency. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The Supreme Court has said that

the two-part test announced in <u>Strickland</u> applies to challenges to guilty pleas based on ineffective

assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58 (1985).

**I**.      **Trial counsel misrepresentations and errors (ground one)**

Thacker's first ground for relief raises a host of claims relating to his trial counsel's

representation, including: (a) counsel rushed Thacker into entering a guilty plea despite awareness

that he suffered from a serious mental illness; (b) counsel's advice regarding the blind plea included

material misrepresentations of fact; (c) counsel failed to inform Thacker that Judge Goodpaster was

also assigned to a pending civil case filed by Thacker's ex-wife accusing him of sexual abuse of her

child; (d) counsel failed to investigate Judge Goodpaster's bias against bipolar disorder as a

13

mitigating condition; (e) counsel's efforts to persuade Thacker to enter a blind plea should be viewed with extreme skepticism; and (f) counsel failed to file a motion to withdraw Thacker's guilty plea.    Respondent contends that these issues have not been presented to the state court for review, are unexhausted, and should be considered procedurally barred. Alternatively, Respondent argues the claims lack merit and can be denied pursuant to 28 U.S.C. § 2254(b)(2). Because Thacker identifies his ground one claims as misrepresentations, omissions, and failures of trial counsel, the Court characterizes them primarily as ineffective assistance of counsel claims to be analyzed under the controlling standard established in Strickland. For the reasons stated below, the Court finds that Thacker is not entitled to habeas corpus relief on his ground one claims.

### A.    Counsel's failure to consider Thacker's mental illness in urging a guilty plea

Thacker first claims that trial counsel failed to investigate the effect of his mental disorder on his ability to enter a knowing and voluntary plea.[7] He argues that counsel knew Thacker had

---

[7]    Although this section of the petition is somewhat unclear, to the extent Thacker may be arguing that his plea was not knowing and voluntary because he was not legally competent at the time of the plea, his claim must also fail. "Enforcement of a conviction based on a plea of an incompetent person is a denial of due process." Sena v. New Mexico State Prison, 109 F.3d 652, 655 (10th Cir. 1997). "The standard for determining competency to enter a guilty plea is the same as that required to determine competence to stand trial." Miles v. Dorsey, 61 F.3d 1459, 1472 n.12 (10th Cir. 1995) (citing Godinez v. Moran, 509 U.S. 389, 396 (1993)). That standard is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense. Godinez, 509 U.S. at 396) (quoting Dusky v. United States, 362 U.S. 402 (1960)). As detailed in the analysis in subpart A of ground one, it is clear that Thacker was legally competent at the time of the plea. The Court also notes that in subpart E of his ground one argument, Thacker states: "Although his mental condition did not render him legally insane or incompetent, it did affect his ability to make reasoned, rational decisions and appreciate significantly the consequences of his actions." Dkt. # 16 at 26.

been diagnosed as bipolar and suffered bouts of depression, yet "rushed" him into a life or death decision without consulting a mental health professional or any of Thacker's friends or family. As support, Thacker provides: (1) an affidavit from Keith Caruso, M.D., stating he was not asked to evaluate the impact Thacker's mental illness could have on his ability to enter a knowing and voluntary plea; (2) a letter from Dr. Caruso to counsel recommending additional testing and evaluation of Thacker; (3) an affidavit from Dr. Donna Schwartz-Watts, a board certified psychiatrist, in which she opined that it is likely Thacker's mental illness impacted his ability to enter into a knowing and voluntary plea; (4) his own affidavit stating his belief that the stress created by confinement in the Mayes County Jail "made it hard" for him to make good decisions; and (5) records from the Mayes County Jail describing a "temper tantrum" thrown by Thacker a few days before he entered his guilty plea. See Dkt. # 16, attachments 3, 4, 6, 7, and 8.

Thacker acknowledges that this claim is unexhausted, but argues that it could not be raised in state court because his attorney did not file a motion to withdraw his guilty plea, thus foreclosing any right to appeal other than the appeal for a mandatory sentence review. Both parties cite OCCA rules and Oklahoma cases to support their positions regarding the exhaustion and procedural bar status of this issue. The Court finds it more efficient to bypass the exhaustion and procedural bar issues and, for the reasons stated below, deny the claim on the merits under 28 U.S.C. § 2254(b)(2). See Hoxie v. Kerby, 108 F.3d 1239, 1242 (10th Cir. 1997) (finding it appropriate to address the merits of habeas petition notwithstanding the failure to exhaust available state remedies where "the interests of comity and federalism will be better served by addressing the merits forthwith.") (quoting Granberry v. Greer, 481 U.S. 129, 134 (1987)).

As a consequence of counsel's failure to investigate the effects of his bipolar disorder on his decision to enter a blind plea, Thacker argues that his plea was not knowing and voluntary as required by the Due Process Clause of the Fourteenth Amendment. It is well settled that a criminal defendant's state court guilty plea must comport with due process. Miles v. Dorsey, 61 F.3d 1459, 1465-66 (10th Cir. 1995); Allen v. Mullin, 368 F.3d 1220, 1238-39 (10th Cir. 2004) (discussing competency); Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996) (discussing the knowing and voluntary requirement). The defendant must be competent to enter the plea, and the plea must be knowing and voluntary. A plea is "knowing" if the defendant has a "full understanding of what the plea connotes and of its consequences." Boykin v. Alabama, 395 U.S. 238, 244 (1969). It is "voluntary" if it is "the product of a deliberate, intelligent choice." Cunningham, 92 F.3d at 1060. The Supreme Court has stated:

> It is beyond dispute that a guilty plea must be both knowing and voluntary. See, e.g., Boykin, 395 U.S. at 242, 89 S.Ct. at 1711; McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. Boykin, 395 U.S. at 243, 89 S.Ct. at 1712.

Parke v. Raley, 506 U.S. 20, 28-29 (1992).

Citing Boykin and United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990), Thacker claims his bipolar disorder "impaired his judgment and ability to make reasoned and rational decisions," thus rendering his plea invalid. He contends his attorney's failure to recognize this problem was constitutionally deficient performance. However, the Tenth Circuit has noted:

16

> In evaluating challenges to guilty pleas, courts must occasionally assess a defendant's contention that his mental illness rendered the plea invalid. Although the defendant's mental illness may be relevant to the general inquiry, it does not in itself establish that the plea violated a defendant's due process rights. See Miles, 61 F.3d at 1470-71.

Gonzales v. Tafoya, 515 F.3d 1097, 1118 (10th Cir. 2008). In Boykin, the Supreme Court found reversible error because the trial judge accepted Boykin's guilty plea without an affirmative showing on the record that it was knowing and voluntary. Boykin, 395 U.S. at 242. The silent record condemned by the Supreme Court in Boykin differs significantly from the state court record in Thacker's case. Trial counsel and the trial judge developed an extensive record concerning Thacker's decision to plead guilty and waive a jury for the sentencing trial. The record, as discussed below, presents compelling evidence reflecting the circumstances surrounding Thacker's plea and waiver, and belies his present contention that the plea and waiver were not knowing and voluntary as a result of ineffective assistance of counsel.

### 1.     In camera conference

Prior to the plea hearing, trial counsel and Thacker conferred on the record, but outside the presence of the judge and prosecutor, regarding his decision to plead guilty and waive a jury for second stage proceedings. See In Camera Trans. at 2-24. Although Thacker expressed that he was nervous, he stated that he was not having any trouble understanding what his attorneys were talking about. Id. at 4. He acknowledged that he had discussed defense strategy, and the strengths and weaknesses of his case, with counsel. Id. at 4-8. He stated that he believed a jury would find him guilty. Id. at 8. He further stated that he believed the "best way to go" was to request the court to sentence him. Id. at 9. Thacker acknowledged that no promises were made to him about the outcome of the sentencing, and that the possible punishments on the murder charge were life, life without

17

parole, and death. <u>Id.</u> at 11. He specifically acknowledged that there was "a real likelihood" that the court would sentence him to death. <u>Id.</u> The following colloquy addressed Thacker's bipolar condition:

Q:     Now, you have been previously diagnosed with mental illness of bipolar; correct?

A:     Yes.

Q:     And I think that was approximately in 1995 or '96, sometime in there?

A:     Yes.

Q:     You were in Huntington, West Virginia at the time?

A:     Yes.

Q:     Were you prescribed a medication or required to take a medication?

A:     Yes.

Q:     Did you take that medication?

A:     Yes.

Q:     And did you stop taking that medication?

A:     Yes.

Q:     What medication was that?

A:     Lithium.

Q:     You're not on Lithium today?

A:     No.

Q:     You're not on any kind of medication for purposes of mental health today?

A:     No.

Q:     Is the fact that you're not on something or taking some kind of medication affecting your thinking today in your mind?

A:      No.

Q:      That's not to say you wouldn't want to have some kind of medication. You've mentioned you're nervous?

A:      Yes.

Q:      Do you feel anxiety at times?

A:      Yes.

Q:      Do you feel depression at times?

A:      Yes.

Q:      But as far as today are you thinking clearly?

A:      Yes.

Id. at 12-13. Trial counsel then proceeded to review with Thacker background information about the trial process, including voir dire, burden of proof, and the effect of a guilty plea on the appeal process. Id. at 13-22. The session ended with the following relevant exchange:

Q:      Now one of the concerns I have is because I've known you for three years and I've seen your emotions change at times over the period of time, sometimes you seem a little more depressed than others but you've always seemed to understand me and I've never really had a problem understanding you but knowing your mental health history do you think that's affecting your decision today?

A:      No.

Q:      Now, I don't think that it's any secret but you've previously been tried in Tennessee and you were found guilty and a jury gave you the death penalty in Tennessee.

A:      Yes.

Q:      Does the fact that you've previously received the death penalty, is that affecting you in any way of you making this decision today?

A:      No.

Q:      This was your opinion yesterday, wasn't it?

19

A:      Yes.

Q:      And it was your opinion last week when we met and talked to you about it?

A:      Yes.

Q:      How did you feel when you first learned that we were contemplating this approach? [pleading guilty and allowing the judge to decide sentencing].

A:      I thought it might be a, I thought [it] was a good idea.

Q:      You've mentioned in your addendum [to the written plea] that if you plead guilty one of the reasons why you're pleading guilty is because you are guilty.

A:      Yes.

Q:      How about family, how do you feel about the family in this situation?

A:      Well, I'm sorry that I caused them pain and I just, I don't want to put them through a long drawn out trial and make them have to relive everything.

Q:      Is that feeling affecting your decision in part of why you're pleading guilty?

A:      Yes.

Q:      Is it affecting it to the point that you don't understand?

A:      No.

Id. at 22-23. Following this private conference between Thacker and his attorneys, another conference was held in Judge Goodpaster's chambers with Thacker, his three trial attorneys, the district attorney and the judge all present. Thacker's trial attorneys announced that Thacker would be entering a guilty plea and requesting sentencing by the court, rather than a jury. Id. at 25. His trial counsel reviewed many of the same points discussed in the private conference, and Thacker reaffirmed his desire to plead guilty and waive a jury for sentencing. Regarding the bipolar issue, the trial judge asked the following questions which were answered by Thacker:

20

Q:      And even though you've had some diagnosis in your life of being bipolar, you -- and you're not taking medication; right?

A:      No, sir.

Q:      Is there currently a  prescription for you to be taking something?

A:      No, sir.

Q:      Nothing not right now currently?

A:      No, sir.

Q:      Okay. But understanding that that is a diagnosed condition that you may have, you don't feel that you have any questions about what's going on and how it can affect you?

A:      No, sir.

Id. at 31-32. After learning that Thacker had not discussed his decision with any family member, the judge asked if he wanted that opportunity. Thacker replied, "No, sir."  Id. at 34. The judge also asked several questions of Thacker regarding his representation by the trial attorneys. Thacker responded that they consulted with him on a regular basis, he had no complaints about the representation, and that each of the three attorneys had "done a good job." Id. at 40-41.

**2.      Plea hearing**

At Thacker's plea hearing on December 2, 2002, the trial court discussed the following relevant issues with Thacker:

a.      The court asked Thacker if he was under the influence of any drug, substance, or medication of any kind. Thacker replied, "No, sir." Plea Hr'g Trans. at 7.

b.      The court asked Thacker if "being diagnosed as bipolar, taking lithium, not taking lithium, having gone to some sort of a mental health facility in Huntington, West Virginia, having drug rehab in Florida at the age of 16" affected his ability to understand and comprehend the nature and consequences of the plea hearing. Thacker replied, "No, sir." Id. at 9.

21

c.      The court asked Thacker if he understood the charges and possible punishments for each charge. He replied that he understood. Id. at 9-11.

d.      The court asked Thacker if anybody had promised him anything to get him to waive his right to a trial by jury, or threatened or coerced him in any way. Thacker replied, "No, sir." Id. at 12.

e.      After discussing all the rights Thacker was giving up, the court asked him, "so as you approach this idea of making a guilty plea here today, all you know for sure is that the state will have the right to put on their case regarding sentencing and you'll have the right to put on mitigating factors and argue that to the court?" Thacker replied, "Yes, sir." Id. at 15-16. Thacker also confirmed that he had "no expectation of what might happen regarding a plea of guilty." Id. at 16.

f.      During the plea hearing, Thacker's trial counsel asked why he was making the decision to plead guilty and waive a jury trial for sentencing. Thacker replied, "Because I want to get this over with as soon as possible and not have to put the victim's family through any more pain and I have to reurge all of the bad memories and things that have come out in a trial." Id. at 23. He also stated that he had been thinking about not wanting to cause further harm to the victim's family "for a long time, three years almost." Id.

**3.      Written plea**

As additional record evidence supporting his guilty plea, Thacker signed a document entitled "Plea of Guilty - Summary of Facts" (O.R. at 502-09).[8] On the first page of the form, Thacker affirmed that he could read and understand the form.  Id. at ¶ 4.  He stated that he understood the range of punishment for his murder count to be life, life without parole, or death. Id. at ¶ 11. Thacker acknowledged that, without a plea agreement, the judge could sentence him to any of the options in paragraph 11. Id. at ¶ 21. He identified Silas Lyman, Lynn Burch and Gretchen Mosley as his lawyers. Id. at ¶ 15. Thacker affirmed that he understood the nature and consequences of the

---

[8]      Thacker's attorneys filled in "specific things like the case number and the types of crimes and the statutory authority," but the rest is in Thacker's handwriting. In Camera Trans. at 15. Thacker prepared the factual statement attached as "Addendum C" in his own handwriting. Id. Thacker signed the plea in open court at his plea hearing in front of Judge Goodpaster. Plea Hr'g Trans. at 5.

proceeding, had talked over the charges with his lawyer, had advised his lawyer regarding any available defenses, and had his lawyer's advice. Id. at ¶¶ 8 and 16. Further, he answered "Yes" to the question, "Do you believe your lawyer has effectively assisted you in this case and are you satisfied with his/her advice?" Id. at ¶ 17. Thacker understood that he was not entering into a plea agreement, but was requesting a non-jury trial for sentencing. Id. at ¶ 19. He gave an accurate, succinct description of the factual basis of the crimes to which he was pleading guilty. Id. at ¶ 24 and Addendum "C". Thacker swore under oath that his answers were true and correct, and that he understood he could be prosecuted for perjury if he had made false statements to the court. Id. at ¶ 28.  He ended his description of the crimes with the following handwritten statement:

> All the charges are true and were committed on or around December 23, 1999 in Mayes County.
>
> I am pleading guilty to the charges listed because I am in fact guilty and I do not wish to cause the victim's family and friends more pain by forcing them to endured [sic] a long drawn out trial. I have caused enough pain and heartache and I [am] deeply sorry and want to put this to an end for everyone.

O.R. at 509, Addendum "C." Based on petitioner's averments, the state court made factual determinations that Thacker understood the nature, purpose and consequences of the proceeding, that the pleas of guilty were knowingly and voluntarily entered, and that a factual basis for the pleas existed. Id. at ¶ 32(b), (c), and (e).  The trial court judge's determination that Thacker's guilty pleas were knowingly and voluntarily entered was affirmed by the OCCA and is a finding of fact. Thacker has not carried his burden of overcoming the presumption of correctness afforded those findings of fact by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### 4.      Conclusion

Despite the extensive plea record described above, Thacker now argues that his guilty plea was not knowing and voluntary due to ineffective assistance of counsel. The record simply does not support his contention. Thacker's sworn testimony, as well as the conference with his attorney and the written plea, establish that he had ample opportunity to discuss his options with his attorneys, that he understood his options, that he was not coerced to enter a plea or waive his rights to a jury, and that he had specific reasons for not wanting to go forward with a jury trial. Significantly, Thacker does not allege in his August 1, 2006, affidavit attached to the petition that his bipolar disorder affected his decision. See Dkt. # 16, attachment 7. The only reference to Thacker's mental state at the time he entered his plea is found in paragraph eight of his affidavit:

> I also believed the stress of how I was treated in the Mayes County Jail made it hard for me to make good decisions. I was separated from other inmates. All of the inmates except for me were released from their cells into the pod everyday. I remained locked in my cell. The jailers drew a line around my cell and told the other inmates and jail employees not to cross it. They treated me like "Hannibal Lector." The other inmates taunted and tormented me about my crimes and caused my cell to flood on several occasions. The inmates called me names such as "Thacker the Hacker." Most of the jailers just laughed and acted like I deserved the treatment I received from the other inmates. The closer it got to my trial date, the more stressed out I became. By the time my lawyers approached me about entering a blind plea I was really on edge. They pushed me really hard to enter the plea. I believe that the stressors in the jail decreased my ability to disagree and increased my willingness to do what my lawyers wanted me to do.

Id. at 2-3. Despite Thacker's allegations concerning his treatment at the Mayes County Jail, he does not refer to his bipolar disorder.

In light of the record cited in parts 1, 2, and 3 above, this Court finds that Thacker's plea was knowing and voluntary. "In the guilty plea context, to establish a claim for ineffective assistance of counsel [in violation of the Sixth Amendment], a defendant must show that counsel's performance

24

fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." United States v. Silva, 430 F.3d 1096, 1099 (10th Cir. 2005). Thacker fails to satisfy this two-prong test. His attorneys' alleged failure to investigate the effect of Thacker's bipolar mental disorder on his guilty plea was not deficient performance under Strickland. Counsel's advice to plead guilty was well within the range of competence demanded of counsel in criminal cases. The evidence of guilt was overwhelming, including a videotape of Thacker's confession detailing the crimes he committed. The fact that Thacker had been diagnosed with bipolar was considered by the trial court. Thacker has failed to present evidence to rebut the finding of fact that his plea was knowing and voluntary. The Court finds that counsel's performance did not fall below an "objective standard of reasonableness" under the circumstances of this case. See Strickland, 466 U.S. at 688. Thacker is not entitled to relief on this portion of his ground one claim.

B.     Alleged material misrepresentations of facts regarding judge

Thacker next claims his trial counsel misrepresented certain facts regarding Judge Goodpaster when advising him to enter a blind plea of guilty. Specifically, he argues that counsel told him that Judge Goodpaster had never imposed the death penalty in a guilty plea case, but failed to inform him that no other defendants in a capital case had entered a blind plea before the judge. Further, he states that counsel failed to inform him that the judge was an elected official who might be influenced by the public outcry for justice in Thacker's case. Respondent notes that this claim is unexhausted, and Thacker again replies with procedural reasons why he believes he could not raise the claim in state court.[9] Notwithstanding the exhaustion status of this issue, the claim can be denied on the merits.

---

[9]     In his reply, Thacker concedes that he has never presented this claim in state court. Dkt. # 26 at 8.

As support for his claim, Thacker provides his own affidavit executed on August 1, 2006, nearly four (4) years after he entered his guilty plea. Dkt. # 16, attachment 7. In the affidavit, Thacker states that he believed his lawyer's statements that Judge Goodpaster had never sentenced anyone to death meant other capital defendants had plead guilty in front of the judge and received a sentence less than the death penalty. Id. at ¶ 4. Thacker says, "I later learned I was the first and only death penalty case to plead guilty in front of him." Id.  He also claims he did not know the judge was elected by the voters of Mayes County, and "it changes everything that Judge Goodpaster would have to be accountable to the people of Mayes County if he did not give me the death penalty." Id. at ¶ 8. Finally, he states:

> As a child I had a hard time learning, and I never finished school. Even though I have been in legal trouble several times, I do not understand the law. I trusted my lawyers' advice and never really questioned it. While it is true my lawyers never promised me Judge Goodpaster would give me a sentence less than death if I plead guilty, I believe they misled me by not fully explaining the situation. Had my lawyers been honest with me, I would not have entered a guilty plea and instead proceeded with the venue motion and taken my chances with whatever jury was assigned to my case.

Id. at ¶ 7. The Supreme Court has advised that "such affidavits are to be treated with a fair degree of skepticism." Herrera v. Collins, 506 U.S. 390, 423 (1993) (stating that affidavits presented years after a conviction are not uncommon, especially in capital cases, and are an unfortunate although understandable occurrence because a prisoner's life is at stake). Thacker's current argument must be considered in light of the extensive record which conclusively demonstrates he clearly understood Judge Goodpaster might impose the death penalty.

1. In the December 2, 2002, conference between Thacker and his counsel, Thacker told his attorneys that no promises had been made to him regarding sentencing. Further, he believed that there was "a real likelihood" that the court would sentence him to death. In Camera Trans. at 11.

26

2.   Before Thacker entered his blind plea, Judge Goodpaster asked him, "Are you working under any kind of an inference or suggestion that some particular action might be taken in this case?" Thacker replied, "No, sir." Id. at 30. Thacker also stated that no one had suggested that Judge Goodpaster might be a judge who might be sympathetic to his case and not take a particular action. Id.

3.   Thacker reiterated in the plea hearing that no promises had been made to him, and that he had no expectations of what might happen regarding sentencing. Plea Hr'g Trans. at 15-16.

Thacker argues that his blind plea was involuntary because of misrepresentations and omissions of trial counsel. He contends his guilty plea was obtained in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." Machibroda v. United States, 368 U.S. 487, 493 (1962) (string citations omitted). "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Id. (quoting Kercheval v. United States, 274 U.S. 220, 223 (1927)).

To the extent Thacker is arguing a violation of the Sixth Amendment right to effective counsel, he must  show deficient performance by counsel and resulting prejudice. Strickland, 466 U.S. at 692. As stated earlier, the two-part test for evaluating ineffective assistance of counsel claims is applicable to claims arising out of the plea process. Laycock v. New Mexico, 880 F.2d 1184, 1187 (10th Cir. 1989). When applied to a claim that a plea was involuntary because of ineffective assistance, the Strickland standard requires the determination of whether counsel's advice was within the range of competency demanded of attorneys in criminal cases. McMann v. Richardson, 397 U.S. 759, 771 (1970). If deficient performance is shown, Thacker must prove prejudice - that the errors of his counsel were so serious and prejudicial that they deprived him of a fair trial. Strickland, 466

27

U.S. at 687. The prejudice component requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, he would not have plead guilty and would have insisted on going to trial." Laycock, 880 F.2d at 1187.

Even accepting Thacker's representation in his affidavit that he would not have plead guilty had he been fully informed that Judge Goodpaster was an elected official who had no history regarding blind pleas in a capital case, the Court finds he has not demonstrated deficient performance by counsel to satisfy the first prong of the Strickland test. Thacker was well informed of the consequences of his plea and knew that Judge Goodpaster had the authority to sentence him to life, life without parole, or death. His counsel's failure to inform him that the judge was an elected official and had no previous experience in accepting a blind plea in a capital case is of no moment and does not constitute deficient representation. There is no indication that counsel misled Thacker regarding what sentence he might receive. Having failed to demonstrate deficient performance, petitioner is not entitled to habeas relief on this portion of his ground one claim.

### C.       Failure to advise that Judge Goodpaster also assigned to civil case filed by ex-wife

Thacker next complains that his trial counsel failed to inform him that Judge Goodpaster was the assigned judge on a case filed by Thacker's ex-wife alleging he had sexually abused her three-year old daughter. In his second application for post-conviction relief, Thacker claimed his due process rights were violated because the judge had access to the unadjudicated accusations made in the lawsuit of which Thacker and his counsel were unaware. See Second Application for Post-Conviction Relief  in OCCA Case No. PCD-2006-990 at 19. No mention is made of an ineffective assistance of counsel claim for failing to inform Thacker that the case was assigned to Judge Goodpaster. Further, Thacker admits that the claim is unexhausted. Dkt. # 26 at 12.

This claim can be disposed of readily on the merits. Thacker fails to provide any legal authority to support his allegation that counsel's failure to advise him on this issue was constitutionally deficient. In fact, Thacker makes no reference at all to the <u>Strickland</u> standards for reviewing ineffective assistance of counsel claims. His argument is based on a self-serving statement in his affidavit in which he contends he would have refused his lawyers' suggestion to plead guilty in front of Judge Goodpaster if he had known the judge was also the judge assigned to the civil case. Dkt. # 16, attachment 8 at 2. Thacker provides no evidence that his attorneys were aware of Judge Goodpaster's involvement in the civil lawsuit. To the contrary, he presents affidavits from two of his trial attorneys who state that they were unaware that Judge Goodpaster was also the judge assigned to the lawsuit filed by his ex-wife. <u>See</u> Dkt. # 16, attachments 12, 13.  Further, according to an affidavit executed by Judge Goodpaster, the judge "was not consciously aware of the allegations" made against Thacker in the civil lawsuit at the time he accepted Thacker's guilty pleas and heard his sentencing trial. Dkt. # 21, Ex. 1 at ¶ 4. Although Thacker refutes the judge's statement, he provides no specific reference to the record when he claims, "The record contradicts certain statements in Judge Goodpaster's affidavit regarding his knowledge of and involvement in the civil suit." Dkt. # 26 at 14. Made with the benefit of hindsight, Thacker's belated assertion in his affidavit that he would not have entered a blind guilty plea had he known about Judge Goodpaster's assignment as the judge in the civil lawsuit is insufficient to sustain a claim that trial counsel was constitutionally deficient. His statement that he "believes Judge Goodpaster was influenced by Trena Thacker's allegations" is conjecture. Thacker provides no evidence that the judge was influenced, nor does he provide any legal citations to support his claim that trial counsel had a duty to investigate

29

and advise him of the judge's other assignment. Thacker has not shown deficient performance by counsel. Relief is not warranted on this issue.

      **D.**      **Failure to investigate judge's bias regarding bipolar disorder**

In this portion of ground one, Thacker contends that his trial counsel was constitutionally ineffective for failing to investigate and discover Judge Goodpaster's (alleged) bias against bipolar disorder as a mitigating condition. Dkt. # 16 at 24. This claim was raised by petitioner in his second application for post-conviction relief as part of Proposition One. See Application in PCD-2006-990 at 22. Rejecting Thacker's claim that Judge Goodpaster was biased against persons with bipolar disorder, the OCCA did not address the accompanying argument that trial counsel failed to investigate and learn of the judge's alleged bias. The OCCA disposed of the issue as follows:

> Petitioner further claims, based upon *ex parte* hearsay discussions his post-conviction counsel had with Judge Goodpaster, that the trial judge was of the opinion that bipolar disorder was not a serious mental illness and that said evidence was treated by said judge as aggravating, rather than mitigating. Petitioner claims he was "unaware" of the trial judge's positions on these matters. This claim, however, is refuted by Judge Goodpaster's own affidavit, which states he did not discount such evidence in sentencing Petitioner.
>
> Proposition one is, therefore, without merit.

See Opinion Denying Second and Third Applications for Post-Conviction Relief, Dkt. # 36, attachment 1 at 7-8. The OCCA did not rely on procedural grounds to deny Thacker's ineffective assistance of counsel claim for failing to investigate and discover the judge's alleged bias. Nor did the state court even make a cursory reference to the claim. The OCCA did, however, deny the underlying claim finding that Judge Goodpaster did not have a bias against bipolar disorder defenses. Without specifically addressing the ineffective assistance of counsel claim, the OCCA's denial of relief on Thacker's second application can be considered a decision on the merits warranting

deference by this Court. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (review is deferential and relief cannot be granted unless the state court's result is legally or factually unreasonable).

Respondent contends that the issue is procedurally barred because Thacker failed to present the ineffective assistance claim to the OCCA in his original application for post-conviction relief. Dkt. # 21 at 25. Alternatively, he argues the claim should be dismissed as meritless. Regardless of the procedural posture of the claim, the Court finds the claim is without merit. It is Thacker's burden to overcome the presumption of Judge Goodpaster's impartiality. Bracy v. Gramley, 520 U.S. 899, 909 (1997); Fero v. Kirby, 39 F.3d 1462, 1479 (10th Cir. 1994). He has failed to demonstrate bias on the part of Judge Goodpaster.

As support for his underlying claim that Judge Goodpaster was biased against persons suffering from bipolar disorder, petitioner relies on an affidavit from his first post-conviction counsel, Vicki Ruth Adams Werneke. See Dkt. # 16, attachment 14. Ms. Werneke stated that the judge informed her "that because of his experience as a judge, he discounted Bipolar Disorder as an excuse for criminal behavior and bad conduct." Further, the judge "had a family member who claimed to suffer from Bipolar Disorder who used being bipolar as an excuse for inappropriate behavior." Id. Respondent obtained an affidavit from Judge Goodpaster in which he responded:

> I have never stated that I categorically discount bipolar disorder as a mitigating factor in regard to criminal behavior or bad conduct. Specifically, with regard to Thacker's case, I did not discount Thacker's evidence that he suffered from bipolar disorder because of a personal bias against persons diagnosed with the disorder or because of my experiences as a judge or with a late family member who claimed to have bipolar disorder.

Dkt. # 21, Ex. 1 at ¶ 5. Significantly, Thacker points to no evidence of judicial bias in the record.

Before announcing his decision at the conclusion of the second stage trial, Judge Goodpaster said:

> This court can state with absolute certainty and sincerity that each and every witness called to the witness stand by both the state and defense has been listened to intently and carefully, that every exhibit introduced and admitted into evidence numbering 24 have been carefully inspected and examined including but not limited to the photographs, the taped confessions and the statements of the defendant and Dr. Keith Caruso and his psychiatric evaluation. In addition thereto this court has taken copious notes and made numerous observations of the defendant and witnesses throughout this hearing and has reviewed those notes and those observations throughout the entire hearing and its conclusion.
> . . .
>
> Every witness called by the defense in mitigation was given full and complete consideration with a high degree of scrutiny and has been weighed by the court by weighing the aggravating circumstances against the mitigating circumstances. Those mitigating circumstances include but are not limited to the love of his mother, aunt, sister, friend and former girlfriend. The reporting of the missing can of mace, the belief of the minister that Mr. Thacker has accepted some religion in his life and the doctor's report indicating some level of bipolar illness, and further that Mr. Thacker has shown remorse for his actions.

Tr. Trans. Vol. II at 393, 396. Applying a presumption of judicial integrity, the Court finds that Thacker has not met his burden to overcome the presumption. Quoting the Seventh Circuit, the Tenth Circuit has agreed that "judges for the most part are presumptively capable of overcoming [biasing] influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness." Fero v. Kirby, 39 F.3d 1462, 1479 (10th Cir. 1994) (quoting Del Vecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1373 (7th Cir. 1994)). Accordingly, the OCCA did not reach a decision contrary to or involving an unreasonable application of federal law in finding that Judge Goodpaster was not biased. Because the judge was not biased, Thacker's trial counsel did not provide constitutionally ineffective

assistance for failing to investigate the judge's opinions about bipolar disorder. Habeas relief is

denied on this portion of Thacker's ground one claim.

> E.      Deficient advice of counsel

Thacker next contends that his trial counsel was ineffective for recommending he plead guilty

and opt for a non-jury sentencing trial. Respondent answers that this claim is unexhausted and

procedurally barred. Alternatively, it fails on the merits. Thacker replies that his first post-conviction

counsel expressed concerns about this issue in the conclusion to the application for post-conviction

relief, but the OCCA failed to address the specific issue. Once again, the Court finds it more efficient

to address the merits under 28 U.S.C. §2254(b)(2), rather than analyze the exhaustion and procedural

bar issues.

Relying on language from the Supreme Court's decision in <u>Florida v. Nixon</u>, 543 U.S. 175,

190 n.6 (2004), and the ABA Guidelines for the Appointment and Performance of Defense Counsel

in Death Penalty Cases § 10.9.2 Commentary (rev. ed. 2003), Thacker contends his counsel's advice

fell below the standard expected of capital defense lawyers.  In the <u>Nixon</u> case, defense counsel made

a strategic decision to concede at the guilt phase of Nixon's trial and to concentrate on convincing

the jury to spare Nixon the death penalty at the penalty phase. Although counsel informed Nixon of

this strategy, the defendant neither consented nor objected to the plan. As in Thacker's case, there

was overwhelming evidence of Nixon's guilt of various crimes, including murder. <u>Nixon</u>, 543 U.S.

at 556-57. On appeal, Nixon argued that his counsel had rendered ineffective assistance by conceding

Nixon's guilt without his express consent. Although the Supreme Court found that Nixon's counsel

was not constitutionally ineffective under <u>Strickland,</u> Thacker points to language in a footnote of the

case which states that "pleading guilty without a guarantee that the prosecution will recommend a

life sentence holds little if any benefit for the defendant." Id. at 190 n.6. Further, section 10.9.2

(B)(1)(a) of the ABA Guidelines relied upon by Thacker states:

> Prior to the entry of the plea, counsel should make certain that the client understands
> the rights to be waived by entering the plea and that the client's decision to waive
> those rights is knowing, voluntary, and intelligent.

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases

§ 10.9.2  (rev. ed. 2003).

The Supreme Court has advised that that the norms of practice reflected in American Bar

Association standards are only guides. Roe v. Flores-Ortega, 528 U.S. 470, 479 (2000). Further,

"imposing 'specific guidelines' on counsel is 'not appropriate.'" Id. (quoting Strickland, 466 U.S.

at 688). As respondent correctly observes, pleading guilty is a decision for the defendant to make.

In subpart A above, the Court specifically found that Thacker's decision to plead guilty was knowing

and voluntary. This Court's role is not to undo what in hindsight may seem to Thacker to have been

an unwise choice. Rather, the Court must assure that the proceedings leading to his conviction and

sentence were free of constitutional error. See Allen v. Mullin, 368 F.3d 1220, 1245 (10th Cir. 2004).

In light of the overwhelming evidence in support of the State of Oklahoma's case, Thacker's

confession, and his stated desire that he did not want to cause further pain to the victim's family

through a trial, the Court concludes that Thacker's trial counsel was not constitutionally deficient for

advising him to plead guilty and waive a jury for the sentencing stage of his trial.

**F.**      **Failure to file a motion to withdraw guilty plea**

Next, Thacker complains that his trial counsel failed to file a motion to withdraw his guilty plea, thus limiting the issues he could pursue on direct appeal and subsequent proceedings. This claim was not presented in state post-conviction proceedings, and respondent asserts it would be procedurally barred if presented to the state court now. Moreover, respondent contends the issue fails on the merits if addressed pursuant to 28 U.S.C. § 2254(b)(2). The Court agrees that the claim is without merit. The following colloquy between Thacker and his trial counsel bears significance:

Q:      Has Gretchen Mosley talked to you about your appeal issues in this case?

A:      Yes.

Q:      You understand by entering a plea of guilty some of those issues you may lose the opportunity to seek relief from the Court of Criminal Appeals on?

A:      Yes.

Q:      Some of them you may not. Do you understand that that would depend on your sentence and really what happens from here on out?

A:      Yes.

Q:      Is there any appeal issue that you can think of that you want preserved to make sure that you have that issue on appeal?

A:      No not that I can think of.

In Camera Trans. at 19-20. The attorneys appropriately discussed appeal issues with Thacker and advised him that if he entered a plea of guilty, his appeal rights would be limited. Counsel also specifically asked Thacker if he could think of any issues he wanted to preserve for appeal, to which Thacker answered, "No." Id.

While it is true that an attorney who "disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumably prejudicial," United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003), there is no evidence that Thacker ever gave specific instructions to file a motion to withdraw his guilty plea. Thus, to decide whether counsel's representation fell below an objective standard of reasonableness, the Court will apply the test used "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken. . . ." Flores-Ortega, 528 U.S. at 478. According to the Supreme Court in Flores-Ortega, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480 (2000). Further, a "highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea." Id. Thacker does not specifically state that he asked his attorney to file a withdrawal of plea for him. The record reflects that he was advised of his rights to appeal. The Tenth Circuit Court of Appeals has determined that where a defendant is convicted on a plea of guilty and does not indicate to his attorney an intention to appeal, "[a]n attorney has no absolute duty in every case to advise a defendant of his limited right to appeal after a guilty plea. Failure to notify the defendant of this limited right is not in itself ineffective assistance." Laycock, 880 F.2d at 1187-88 (internal citations omitted). Counsel has a duty to inform the defendant of the limited right to appeal from a guilty plea only "if the defendant inquires about an appeal right," or "[i]f a claim of error is made on constitutional grounds, which could result in setting aside the plea." Id. at 1188; see also Hardiman v. Reynolds, 971 F.2d 500, 506 (10th Cir. 1992) (stating that counsel has a duty to inform the

defendant of his appeal rights based on error of constitutional magnitude if "counsel either knows or should have learned of his client's claim or of the relevant facts giving rise to the that claim").

In this case, the record demonstrates that, despite being informed by the trial court of his right to appeal and the procedures to follow to perfect an appeal, Thacker failed to file an application to withdraw his plea or to perfect a certiorari appeal following his conviction on his guilty plea. Thacker's record is void of any evidence that he wanted to file a motion to withdraw his guilty plea. Nothing occurred during the conferences with his attorneys and the judge, the plea hearing, or the sentencing hearing which gave counsel reason to believe that Thacker would want to withdraw his guilty plea. Thus, counsel had no reason to think that Thacker would want to withdraw his plea. See Flores-Ortega, 528 U.S. at 480.  Thacker also presents nothing to indicate that his attorney had any reason to know of an error of constitutional magnitude.  His trial counsel's failure to file a motion to withdraw guilty plea was not constitutionally deficient representation in this case. Thacker is not entitled to habeas relief on this claim.

## II.      Denial of equal protection and due process (ground two)

In ground two, Thacker contends that his constitutional rights to equal protection and due process were violated because the Oklahoma courts failed to follow established procedures to determine whether he desired an appeal. He acknowledges that this claim is unexhausted. Notwithstanding the exhaustion status, the Court finds the claim shall be denied on the merits.

Thacker relies primarily on Oklahoma state cases in which the defendants waived their appeal rights and voluntarily sought the death penalty as punishment. See Grasso v. State, 857 P.2d 802 (Okla. Crim. App. 1993); Fluke v. State, 14 P.3d 565 (Okla. Crim. App. 2000); and Hooper v. State, 142 P.3d 463 (Okla. Crim. App. 2006). Insofar as Thacker claims his equal protection rights were

violated because he was treated differently from Grasso, Fluke and Hooper, his argument is misplaced. The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982). Unlike Thacker, the defendants in each of his referenced cases specifically waived their appeal rights and indicated they wanted to be put to death. Thacker did not waive his right to a sentencing trial or to an appeal of his sentence. Nor, as he indicates, did he "volunteer" for the death penalty as did the defendants in <u>Grasso</u>, <u>Fluke</u>, and <u>Hooper</u>. He is not "similarly situated" to the defendants in those cases. Thacker has failed to demonstrate a violation of his equal protection rights.

Further, as explained in detail in ground one, Thacker voluntarily and knowingly waived his right to a jury trial for sentencing with a full understanding of the possible consequences. He was also advised that by pleading guilty, he would be waiving his rights to appeal some issues. He did preserve his right to a direct appeal of the sentencing trial and was not denied that process. Thacker's apparent later regret at the outcome of his proceedings is not sufficient to establish that his constitutional rights were violated during the process.  Neither his equal protection nor due process rights were violated. He is not entitled to habeas relief on his ground two claim.

**III.      Trial judge considered information outside the record and was biased (ground three)**

In ground three, Thacker presents two separate complaints about Judge Goodpaster. First, he alleges "a strong possibility exists that Judge Goodpaster relied on information when he sentenced Mr. Thacker to death of which both Mr. Thacker and his trial counsel were unaware and given no opportunity to rebut." Dkt. # 36 at 10.  This claim was raised in Thacker's second application for post-conviction relief, and summarized by the OCCA as follows:

38

In proposition one (PCD-2006-990), Petitioner claims he was denied due process of law due to a "strong possibility" that his trial judge, James D. Goodpaster, considered or relied upon "information" of which Petitioner "was unaware and had no opportunity to explain or deny." That information was the filing of a civil lawsuit by Petitioner's (then) wife in July 2000 (after the Oklahoma murder charges were filed) in which she claimed Petitioner had sexually molested and abused his step-daughter, a minor. That case was assigned to Judge Goodpaster, the same judge who eventually took Petitioner's blind guilty plea.

Petitioner believes the trial judge likely considered this unadjudicated claim (along with all the other evidence in the case) in passing sentence on his blind plea. Petitioner claims that, in entering his guilty plea, he was unaware that Judge Goodpaster had been assigned to the case. Petitioner also urges that the sexual abuse claims were untrue, that they were eventually dismissed, and that he should have been allowed to explain and deny those claims prior to sentencing.

See Dkt. # 36, attachment 1 at 5-6. The OCCA first determined that the claim was waived because it was not raised in Thacker's previous post-conviction proceedings. Id. at 6. Nonetheless, the court proceeded to address the merits, finding:

[W]e also point out other flaws in this claim. First, Petitioner admits he was aware of the lawsuit and filed a response to it. He was represented by counsel at this time, and he would be responsible for telling the attorneys in his criminal trial about the pending matter. Presumably, he did.

Secondly, we have no real information whether or not the sexual abuse claims were true. If they were, then Petitioner was hardly prejudiced by any alleged knowledge a trial judge may have had in regard to the as-yet unresolved claim. Third, as a judge, Judge Goodpaster is presumed to have known the law and to have followed it. The record reveals he is a thorough and professional trial judge. We highly doubt he would have based his sentencing decision upon unadjudicated claims not raised in the case, rather than the known facts, which were especially cruel. Fourth, Petitioner has no firm evidence that the trial judge relied at all upon this matter or was even aware of it. In Judge Goodpaster's own affidavit, filed in the federal lawsuit and attached to the third post-conviction application, he formally denies any conscious awareness of the allegations in that domestic case and that he would not have considered them if he was aware.

And finally, any other judge possibly "could have known" about the matter, as it was reported at twice in the *Tulsa World*.

Id. at 6-7. Thacker argues that the OCCA's ruling is an unreasonable application of Supreme Court precedent, citing Gardner v. Florida, 430 U.S. 349, 362 (1977) (denial of due process when the death sentence was imposed on the basis of information in a presentence report which defendant had no opportunity to deny or explain), and Skipper v. South Carolina, 476 U.S. 1, 4-5 (1986) (potentially mitigating evidence may not be excluded from the sentencer's consideration). The Court disagrees. As discussed in subpart C of ground one, Thacker's assertion that Judge Goodpaster considered information from the child abuse lawsuit filed by Trena Thacker in reaching his sentencing decision is based on pure conjecture. As observed by the OCCA, Thacker has provided "no firm evidence that the trial judge relied at all upon this matter or was even aware of it." Dkt. # 36, attachment 1 at 7. No constitutional violation has been shown, and Thacker is not entitled to habeas relief on this claim.

Thacker next argues that Judge Goodpaster harbored a bias against persons with bipolar disorder.  This claim was raised in his third application for post-conviction relief. The OCCA found the claim to be without merit. Id. at 8. The Court addressed the merits of this claim in connection with the ineffective assistance of counsel claim in subpart D of ground one. For the reasons previously explained in detail, the Court concludes that Thacker has not demonstrated a constitutional violation based on his belief that Judge Goodpaster was biased against persons with bipolar disorder. Habeas relief shall be denied on this portion of ground three.

IV.    **Execution would violate Eighth Amendment prohibition against cruel and unusual punishment (ground four)**

In ground four, Thacker asserts that his execution would violate the Eighth Amendment prohibition against cruel and unusual punishment because he suffers from bipolar disorder.  He claims a constitutional ban on the execution of persons who suffer from a mental illness is a logical extension of the "evolving standards of decency" discussed in Atkins v. Virginia, 536 U.S. 304

(2005) (finding it cruel and unusual punishment to execute a mentally retarded defendant), and <u>Roper</u>

<u>v. Simmons</u>, 543 U.S. 551 (2005) (finding execution of minors to be unconstitutional under the

Eighth Amendment). This claim was raised by Thacker in his second application for post-conviction

relief. The OCCA denied relief, finding:

> In proposition two (PCD-2006-990), Petitioner claims his execution would violate the Eighth Amendment's prohibition against cruel and unusual punishment because he suffered from a severe mental disorder or disability, bipolarism, at the time he committed the crimes. He cites the "evolving standards of decency" referenced in <u>Atkins v. Virginia</u>, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed. 2d 335 (2002) and its progeny, while acknowledging the Supreme Court has never applied such a label to bipolarism. He does, however, cite to Tenth Circuit case, <u>Bryan v. Mullin</u>, 335 F.3d 1207, 1255 (2003), along with a 2006 ABA resolution that would extend the ideas of <u>Atkins</u> to those with a "severe mental disorder or disability."

> Of course, <u>Atkins</u> was decided in 2002, well before Petitioner pled guilty and waived a jury trial on the aggravating circumstances at trial and long before the appellate briefs were filed in Petitioner's original appeal (March 26, 2004). In that appeal, Petitioner raised an Eighth Amendment claim in regard to one of the aggravating circumstances, but he did not raise any claim under <u>Atkins</u>. Nonetheless, this Court, in our mandatory sentence review, considered the evidence of bipolar disorder presented by Petitioner, which was, of course, challenged by the State. We found the death sentence was appropriate.

> Furthermore, <u>Bryan v. Mullin</u> was handed down before Petitioner's appellate brief was filed and long before his first post-conviction application. As such, this issue has been waived for purposes of the Post-Conviction Procedure Act, as Petitioner has raised no legal claim that was previously unavailable.

Dkt. # 36, attachment 1 at 8-9. Respondent contends that because the OCCA found the issue waived,

this Court is procedurally barred from considering it. Alternatively, it fails on the merits under 28

U.S.C.. § 2254(b)(2). This Court declines Thacker's invitation to extend the Supreme Court's

prohibition on executions of mentally retarded persons (<u>Atkins</u>) and minors (<u>Roper</u>) to persons with

mental health issues based on "evolving standards of decency." Neither <u>Atkins</u> nor <u>Roper</u> established,

let alone clearly established, a rule that it would be a constitutional violation to execute persons

suffering from a mental disorder such as bipolar disorder. Thacker's ground four claim fails on the

merits. 28 U.S.C. § 2254(b)(2).

**V.      Counsel failed to investigate and present important mitigating evidence (ground five)**

Thacker next argues that his trial counsel was constitutionally ineffective for failing to

investigate and present "compelling and relevant" mitigating evidence during his second stage trial.

First, he complains that his counsel failed to utilize records from the Florida Department of

Corrections or call any witnesses from Florida to show that Thacker functioned well in a medium

security prison. He argues this evidence would have rebutted the continuing threat aggravating

circumstance, one of three aggravating circumstances found in this case. This issue was raised by

petitioner as Proposition One in his first application for post-conviction relief. Denying relief, the

OCCA found:

> Assuming, *arguendo*, that this claim is not *res judicata* as having been raised
> and adequately addressed in Petitioner's direct appeal, we find the proffered evidence
> falls woefully short of the considerable evidence needed to establish a constitutional
> claim of ineffective assistance of trial or appellate counsel. *See, e.g., Miller v. State*,
> 2001 OK CR 17, ¶ 41, 29 P.3d 1077, 1086 (emphasizing the court will "apply a strong
> presumption that counsel's conduct falls within the wide range of reasonable
> professional assistance.").

> The evidence that would supposedly show counsel rendered ineffective
> assistance would show that, while incarcerated in Florida on separate grand theft auto
> felony convictions (along with various check fraud convictions), petitioner "received
> only two misconducts, one in 1992 for disobeying a medical order to not play
> basketball, and a second in 1997 for calling a kitchen supervisor a derogatory name."
> Petitioner's Post-Conviction Application at page 7.

> The first infraction involved Petitioner lying to prison officials regarding
> whether or not he was handicapped and restricted from playing basketball. Petitioner
> was then under an indefinite health restriction from playing sports, apparently due to
> some medical problem he had reported. Petitioner, however, reported he was not
> restricted from playing basketball, which led to disciplinary action.

The second infraction, which was marked as a "major" rather than "minor," involved Petitioner calling the prison's Food Service Director a "fucking asshole," when Petitioner asked for some soap, but was denied. This infraction resulted in disciplinary confinement of thirty days, along with the loss of "gain time."

We find it significant to point out what Petitioner doesn't tell us. First, Petitioner doesn't tell the length of time he was incarcerated in these "medium security" facilities. Receiving "only two" misconduct violations would be considerably less significant if the length of incarceration was decidedly short, whereas it would have more weight if Petitioner was imprisoned for a longer period of time. Secondly, we are provided no information about the differences between the prison conditions in Florida versus those he experienced more recently.

After reviewing these documents, we see no basis for a claim of ineffective assistance of trial or appellate counsel. Even assuming trial counsel should have anticipated a challenge to Petitioner's behavior in prison during cross-examination, there were legitimate strategic reasons to avoid probing into his specific behavior while in Florida.

Thacker v. Oklahoma, 120 P.3d 1193, 1195 (Okla. Crim. App. 2005). Citing Strickland, the OCCA concluded that the proposition was without merit. Id. at 1196. Thacker contends that the OCCA's resolution of this claim was an unreasonable application of facts to law and contrary to established Supreme Court precedent. However, he provides no additional argument or legal citations to support this claim other than the same arguments presented to the OCCA. Having failed to demonstrate how the OCCA's decision was contrary to or an unreasonable application of Supreme Court law, or how it was an unreasonable application of the facts, Thacker is not entitled to habeas relief on this portion of his ground five claim.

Thacker also argues that trial counsel failed to investigate adequately his conduct during his incarceration in the Florida Department of Corrections. Respondent contends this portion of ground five has not been presented to the state courts, and is unexhausted. Petitioner disagrees, pointing to the paragraph in his first application for post-conviction relief in which he stated that trial counsel failed to correct the implication made during cross-examination of Dr. Caruso that he may not be well

43

adjusted in a medium security prison, and that trial counsel failed to present a witness from the Florida prison. See Dkt. # 26 at 36. However, a careful reading of the first application for post-conviction relief and Thacker's arguments in his reply (Dkt. # 36), reveals that the state court was not presented an issue regarding alleged attorney ineffectiveness for failure to <u>investigate</u> Thacker's conduct while incarcerated in a Florida prison. The ineffective assistance of counsel claim in proposition one of Thacker's first application for post-conviction relief is focused entirely on trial counsel's alleged failure to <u>present</u> compelling mitigating evidence, such as witnesses and records from the Florida prison. <u>See</u> Application for Post-Conviction Relief in OCCA Case No. PCD-2003-137 at 7. Notwithstanding the parties' dispute over the exhaustion status of this claim, the Court finds the interests of comity and federalism will be better served by addressing the merits. 28 U.S.C. § 2254(b)(2); <u>Granberry</u>, 481 U.S. at 134.

In this portion of his ground five claim, Thacker relies on an affidavit prepared by an investigator for his first post-conviction attorney. Thacker argues that his post-conviction counsel's attempts in 2005 to locate anyone within the Florida prison system who remembered Mr. Thacker were most likely unsuccessful because "he was a quiet inmate who did not cause trouble." Dkt. # 16 at 53. He argues that common sense dictates his trial counsel would have had more luck locating prison employees who remembered positive information regarding Thacker's Florida incarceration had they investigated in 2000 when they were appointed to represent Thacker. <u>Id.</u> As noted by Thacker, "evidence that the defendant would not pose a danger if spared [a death sentence] (but incarcerated) must be considered potentially mitigating." <u>Skipper v. South Carolina</u>, 476 U.S. 1, 4 (1986). However, in <u>Skipper</u>, the trial judge had refused to allow mitigation testimony from two jailers and a "regular visitor" that Skipper had made a good adjustment during the months he spent

44

in jail between his arrest and his trial. Id. at 3.  The Supreme Court found that such evidence was relevant to mitigation and should have been allowed. Id. at 5.

In Thacker's case, some evidence was presented concerning Thacker's adjustment in jail. The Court concludes that any additional evidence of Thacker's good behavior his counsel may have discovered upon additional investigation would have been unlikely to help him. Even assuming arguendo that counsel's failure to investigate the behavioral records of Thacker's Florida incarceration was unreasonable, he cannot demonstrate that his mitigation case was prejudiced by the omission. The trial judge heard testimony from one witness, the jail administrator from the Mayes County Jail, that Thacker was a respectful inmate.  Defense counsel also presented several witnesses who testified about Thacker's remorse over the crimes, and general good behavior. It is hard to see how additional witnesses who might have been located from the Florida prison system and called to testify about his good behavior would have added so significantly to Thacker's mitigation case that the outcome would likely have been different. A summary of the witnesses presented at Thacker's punishment trial relating to both the aggravating circumstances and mitigation supports this conclusion. See discussion infra Part VI. Thacker has failed to satisfy the Strickland prejudice prong. Habeas corpus relief shall be denied as to ground five.

## VI.    Victim impact evidence (grounds six, seven)

The prosecution's last witness in the second stage trial was Laci Dawn Hill's brother, Larry Griffin. Mr. Griffin provided victim impact testimony on behalf of the murder victim's family. Tr. Trans. Vol. I at 138-43. In grounds six and seven, Thacker raises several constitutional challenges regarding this victim impact testimony.

In ground six, Thacker first claims the victim impact statement was unconstitutional under the parameters established in <u>Payne v. Tennessee</u>, 501 U.S. 808 (1991). Specifically, he urges that Mr. Griffin's closing request for the death penalty violated Thacker's due process rights to a fair trial. He also complains that Mr. Griffin's statement "contained irrelevant references of the impact of the murder on non-family members, focused on memories of the victim's childhood and the plans she had for the future," and was "overall highly prejudicial." <u>See</u> Dkt. # 16 at 58. Second, Thacker argues that his appellate counsel was constitutionally ineffective for failing to raise an issue on direct appeal regarding the unconstitutional content of Mr. Griffin's impact statement. Thacker states that these claims were raised in proposition two of his first application for post-conviction relief.

Respondent counters that the ground six claims were deemed waived and procedurally barred by the OCCA. Alternatively, he argues that claims are unexhausted and procedurally barred because, contrary to Thacker's allegation, the same claim was not presented to the OCCA in proposition two of his first application for post-conviction relief. Thacker replies that respondent is mistaken, quoting this sentence in the introductory paragraph of his proposition two claim presented to the OCCA:

> Most of Mr. Griffin's statement was inadmissible, for it contained irrelevant references of the impact of the murder on non family members, focused on memories of the victim's childhood and the plans she had for the future, contained a recommendation of a death sentence, and overall was highly prejudicial.

<u>See</u> Dkt. # 26 at 38. A careful review of Thacker's proposition two, however, reveals that the quoted sentence was contained in the paragraph summarizing the victim impact testimony before his argument supporting the proposition that the trial court considered the testimony improperly when making his sentencing decision. No mention is made of a federal constitutional violation. As in ground seven of this habeas case, Thacker's post-conviction proposition two focused on the alleged improper use by the judge in the weighing process of aggravation and mitigation and not the

46

constitutionality of the content. Understandably, the OCCA did not address the content of the victim impact evidence in its analysis of proposition two. This Court cannot fault the OCCA for such omission as it does not appear the ground six issue now before this Court was fairly presented to the OCCA in proposition two.  "Exhaustion requires that the claims be 'fairly presented' to the state court, which 'means that petitioner has raised the substance of the federal claim in state court.'" Fairchild v. Workman, 579 F.3d 1134, 1151 (10th Cir. 2009); see also Picard v. Connor, 404 U.S. 270, 275-76 (1971) (finding a state prisoner must present the state courts with the same claim he urges upon federal courts).  Notwithstanding the exhaustion and procedural bar status of Thacker's ground six claim, the Court finds that it can be denied on the merits. 28 U.S.C. § 2254 (b)(2).

If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment erects no per se bar. "A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Payne v. Tennessee, 501 U.S. 808, 827 (1991). In overruling its own previous split decisions in Booth v. Maryland, 482 U.S. 496 (1987), and South Carolina v. Gathers, 490 U.S. 805 (1989), the Supreme Court observed that "assessment of the harm caused by the defendant has long been an important factor in determining the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing authority about such harm." Payne, 501 U.S. at 808. Noting that in most cases, "victim impact evidence serves entirely legitimate purposes," the Payne Court concluded that such statements are "evidence of a general type long considered by the sentencing authorities." Id. at 825.  Although not constitutionally barred, victim impact statements remain subject to certain restrictions and limitations. Victim impact evidence cannot be "so unduly prejudicial that it renders the trial fundamentally unfair" in violation

of the Due Process Clause of the Fourteenth Amendment. Short v. Sirmons, 472 F.3d 1177, 1192

(10th Cir. 2006) (quoting Turrentine v. Mullin, 390 F.3d 1181, 1200 (10th Cir. 2004)). In 1992,

Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit. 21, § 701.10(c)

(1992),[10] and Okla. Stat tit. 22, §§ 984, 984.1 (1992).[11]

Thacker challenges the constitutionality of Mr. Griffin's "irrelevant" references to the impact

of his sister's death on non-family members, her plans for the future, and childhood memories. Of

particular concern was Mr. Griffin's closing remark in his victim impact statement asking the Court

to "give Steven Thacker the death penalty." Tr. Trans. Vol. I at 143. Significantly, in overruling

Booth, the Supreme Court left one portion untouched. The Tenth Circuit has joined other circuits in

recognizing "that the portion of Booth prohibiting family members of stating 'characterizations and

opinions about the crime, the defendant, and the appropriate sentence' during the penalty phase of

a capital trial survived the holding in Payne and remains valid." Hain v. Gibson, 287 F.3d 1224,

1238-39 (10th Cir. 2002). Thus, Mr. Griffin's request of the trial court to give Thacker the death

penalty was improperly admitted and constitutes a violation of his Eighth Amendment rights. See id.

at 1239. The remaining question is whether the error was harmless.  If constitutional error is

committed at trial, this Court looks to whether the prejudicial impact of the error rises to the

---

[10]      Section 701.10 (c) of Title 21 provides, "[i]n the sentencing proceeding, . . . the state may
introduce evidence about the victim and about the impact of the murder on the family of the
victim."

[11]      Section 984 of Title 22, in effect at the time of Thacker's crime and trial, defines "victim
impact statements" as "information about the financial, emotional, psychological, and
physical effects of a violent crime on each victim and members of their immediate family,
and includes information about the victim, circumstances surrounding the crime, the manner
in which the crime was perpetrated, and the victim's opinion of a recommended sentence."
Per section 984.1, copies of the victim impact statements are to be made available to the
parties.

"substantial and injurious effect" standard set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), and <u>O'Neal v. McAninch</u>, 513 U.S. 432 (1995).

Several factors convince the Court that admission of the improper victim impact evidence was harmless error which does not warrant habeas relief. First, the evidence of Thacker's guilt included his confession. Second, a judge -- not a jury -- presided over the sentencing stage and the judge found the existence of three aggravating circumstances beyond a reasonable doubt before sentencing Thacker to death. The judge found, based upon the evidence, that Thacker committed the murder for the purpose of avoiding arrest, that he posed a continuing threat to society, and that the murder was especially heinous, atrocious, or cruel. The evidence supporting the three aggravating circumstances, independent of the victim impact evidence, was ample. Thus, the victim impact evidence was not so unduly prejudicial that it rendered Thacker's sentencing trial fundamentally unfair. Nor did it have a substantial and injurious effect on Judge Goodpaster's sentencing decision.[12] Accordingly, this Court concludes that the admission of the improper aspects of the victim impact evidence was harmless error. <u>See</u> <u>Welch v. Sirmons</u>, 451 F.3d 675, 704 (10th Cir. 2006), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> in <u>Wackerly v. Workman</u>, 580 F.3d 1171 (10th Cir. 2009).

Finally, because the underlying claim in ground six lacks merit, Thacker's appellate counsel cannot be considered constitutionally ineffective for failing to raise the issue on direct appeal. Thacker fails to qualify for habeas corpus relief on his ground six claim.

---

[12] The judge read the proposed victim impact statement prior to a hearing on Thacker's objections to the statement. Judge Goodpaster overruled the objections after changes were made to the statement. He stated that he knew Griffin was "quite emotional," but did not want to deny the state from putting on a victim impact statement. He also doubted whether anything Griffin said would have an impact on his decision. Tr. Trans. Vol. I at 121.

In ground seven, Thacker contends that the trial judge incorrectly considered the victim impact evidence in weighing the balance of aggravating and mitigating circumstances. He also contends his appellate counsel was ineffective for failing to raise this issue on direct appeal. These claims mirror the claims raised by Thacker in proposition two of his first application for post-conviction relief. Thus, the issues are exhausted. In denying relief, the OCCA found:

> In proposition two, Petitioner claims the trial judge allowed victim impact to play a significant role in second stage deliberations and the weighing process as to aggravation and mitigation. However, we see no evidence the trial judge, as finder of fact, did not comply with 21 O.S. 2001, § 701.10. Furthermore, this issue is waived, as it was not raised on direct appeal.

> This claim is basically a reworked version of the "victim impact acts as a superaggravator" argument that appears in virtually every capital and capital post-conviction case. We have consistently rejected this argument. We see no reason to revisit that issue here.

Thacker, 120 P.3d at 1196 (internal citations omitted). Because the OCCA stated, in addition to a merits decision, that Thacker's proposition two was waived, the respondent contends the issue is procedurally barred. However, where the OCCA actually "decides an issue on the merits, state procedural bars will not preclude federal habeas review." Hawkins v. Mullin, 291 F.3d 658, 663 (10th Cir. 2002) (quoting Hooks v. Ward, 184 F.3d 1206, 1215 (10th Cir. 1999)). Having adjudicated the merits of Thacker's proposition two claim, despite finding it waived, the OCCA's ruling is subject to the deferential standards found in AEDPA. Habeas relief may be granted only where the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). State court findings of fact are presumed correct unless rebutted by the petitioner by clear and convincing evidence. See id. § 2254(e)(1).

At the sentencing trial, the prosecution presented the following evidence in support of guilt and the statutory aggravating factors:

(1)     FBI special agent John Fitzer testified about locating the victim's body by using cadaver dogs, and collecting evidence at the scene on December 29, 1999. He described the location and the state of the victim's body.

(2)     Oklahoma State Bureau of Investigation deputy inspector Dennis Francini testified about his videotaped interview of Steven Thacker at the Dyersburg Police Department in Tennessee on January 3, 2000, in which Thacker described his crimes. The videotape was admitted into evidence and viewed by the trial judge.

(3)     Medical examiner, Dr. Ronald Distefano, testified that the victim died from multiple stab wounds to the chest, was also strangled, and had defensive wounds.

(4)     Missouri Highway Patrol criminal investigator, Roger Rankin, testified about Thacker's crimes committed while he was on the run in Missouri.

(5)     Dyersburg, Tennessee, police detective Jim Porter testified about the murder committed by Thacker while he was on the run in Tennessee.

The defense presented the following witnesses in support of mitigating circumstances:

(1)     Margie Fry, who rented a room to Thacker and his wife, testified that Thacker was always respectful, was helpful around her property, and was a very kind, loving individual whom she trusted.

(2)     Dr. Keith Caruso, a psychiatrist from Tennessee, testified that he was initially engaged to examine Thacker by his Tennessee defense counsel, and determined that Thacker suffered from bipolar disease. He opined that Thacker's crime spree was triggered by emotional stressors, and that he was clinically depressed after his arrest. He also testified that he believed Thacker would function well in a structured setting such as a prison, particularly if he were on medication for his condition.

(3)     Delmar Holt, a jail and prison minister, testified that he ministered to Thacker while he was held in the Mayes County Jail and found him to be very courteous and appreciative of his Sunday visits. He also testified that he believed Thacker was remorseful about his crimes and has turned his life around.

(4)     Janelle Buckskin, jail administrator of the Mayes County Jail, testified that during his incarceration at the jail Thacker never threatened her and always treated her with respect.

51

(5)     Crystal St. Clair, a friend from Huntington, West Virginia, testified that Thacker worked for her husband, that he interacted positively with her children, that she never observed any violent behavior by Thacker although she was aware that he had mood swings, that she was aware he had been diagnosed with bipolar and sought mental health treatment, that he seemed "more leveled out" when he was on medication, made bad decisions when he was not on medication, that she has visited him while he was incarcerated and believes he is very sorry for his crimes, that she believes his life has meaning and does not want him to die.

(6)     Kim Bowen, a former girlfriend from Huntington, West, Virginia, testified that she had a relationship with Thacker for several years, that he was the love of her life, that he had mood swings and she initiated his visits to Prestera Mental Health Facility, that he was loving and kind, and that, despite an awareness of his crimes, she remains his friend and believes he can help others in the future.

(7)     Roxanne Wiley, Thacker's aunt from Ohio, testified about his family history, that the death of his grandfather had a tremendous effect on him as he was the only strong male figure in Thacker's life, that he has told her he is haunted by the memory of his crimes and can't face what he did. She testified that Thacker is a very tender hearted and caring person when he's not having problems with his bipolar disorder, and his life is important to her.

(8)     Lillie Johnston, Thacker's mother, testified that Thacker's father was rarely home, they lived on welfare after she divorced Thacker's father, that she worked two jobs when Thacker was 9 and his 11 year old sister took care of him most of the time, that he had behavior problems as a child, that she drank, and that one of her boyfriends was mean to her children. She described Thacker's moody behavior growing up that continued into adulthood. She stated that she wants him to live because she loves him.

(9)     Nichole Thacker, Thacker's sister, testified about their family history, and that she knew he would be punished for his crimes, but wanted him to live.

Considering the entirety of evidence presented during the sentencing trial, the OCCA rejected Thacker's contention that the victim impact testimony served as an unconstitutional "superaggravator." Thacker, 120 P.3d at 1196. The Court finds that the admission of Mr. Griffin's victim impact testimony did not deprive Thacker of his constitutional rights. States may choose to allow victim impact testimony, see Payne, 501 U.S. at 827, and Oklahoma allows testimony about a crime's impact on the victims provided the testimony does not violate due process. See Cargle v. Oklahoma, 909 P.2d 806, 826 (Okla. Crim. App. 1995). The Supreme Court has determined that

aggravating circumstances give effect to constitutional protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. Tuilaepa v. California, 512 U.S. 967, 979-80 (1994). "[T]he sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." Id. (internal quotations omitted). "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." Id. at 979. The trial judge did not weigh the victim impact testimony in an unconstitutional manner, and his appellate counsel was not constitutionally ineffective for failing to raise the issue on direct appeal. The Court finds that the OCCA's decision on this issue was not an unreasonable application of federal law, nor was it an unreasonable application of facts to the law. 28 U.S.C. § 2254(d). Thacker is not entitled to habeas relief on his ground seven claim.

## VII.    HAC aggravator violates Eighth and Fourteenth Amendments (ground eight)

In the first part of his ground eight claim, Thacker challenges the constitutionality of the heinous, atrocious or cruel ("HAC") aggravator found in Okla. Stat. tit. 21, § 701.12(4) as failing to legitimately narrow the class of defendants eligible for the death penalty. Thacker argues that the HAC aggravator, as applied in Oklahoma and in his case, is unconstitutionally vague and improperly focuses on the suffering of the victim rather than the intent of the murderer (Dkt. # 16 at 71). Respondent counters that the heinous, atrocious or cruel definition has been adequately narrowed to comply with constitutional standards, and Thacker's claim is without merit.

On direct appeal Thacker questioned the constitutionality of the HAC aggravating circumstance applied in his case. The OCCA denied relief, stating:

In proposition two, Appellant claims Oklahoma's heinous, atrocious, or cruel aggravating circumstance violates the Eighth and Fourteenth Amendments to the U.S. Constitution by failing to properly channel the fact finder's discretion in imposing the death penalty. Appellant claims this Court's interpretation of the aggravator has become too broad, that our requirement that the murder be preceded by "torture or serious physical abuse" in order for the aggravator to apply has been interpreted to require no more than conscious suffering. He argues that we have inappropriately focused on the victim's awareness to establish torture while ignoring the "volitional acts of the defendant." He further argues there is no evidence he desired that Ms. Hill consciously suffer or that he engaged in acts for purpose of causing her pain. He claims his inefficiency in accomplishing his goal of killing the victim is an arbitrary factor that does not help to narrow the sentencer's discretion.

These are interesting arguments, more of a general attack on the aggravating circumstance than one specific to Appellant. But they do not require any relief here, for the facts of this case clearly establish Laci Dawn Hill's murder was heinous, atrocious, and cruel and her death was preceded by both torture (in the infliction of both "great physical anguish" and "extreme mental cruelty") and serious physical abuse (in that the victim experienced "conscious physical suffering" prior to her death). See DeRosa v. State, 2004 OK CR 19, ¶ 96, 89 P.3d 1124, 1156 (where the Court used language from various cases from this Court to modify the uniform jury instruction for this aggravator).

Moreover, this Court has rejected similar attacks upon the constitutionality of this aggravating circumstance. See Lockett v. State, 2002 OK CR 30, ¶ 40, 53 P.3d 418, 430; Le v. State, 1997 OK CR 55, ¶¶ 41-45, 947 P.2d 535, 552-53, cert. denied, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). See also Hooker v. State, 1994 OK CR 75, ¶ 44, 887 P.2d 1351, 1364-65, cert. denied, 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995); Revilla v. State, 1994 OK CR 24, ¶ 42, 877 P.2d 1143, 1154-55, cert. denied, 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); Berget v. State, 1991 OK CR 121, ¶¶ 29-34, 824 P.2d 364, 372-74, cert. denied, 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992). In each of these cases we found the instructions given regarding the heinous, atrocious or cruel aggravating circumstance sufficiently narrow its application and pass constitutional muster. Appellant has not persuaded us to hold otherwise.

Thacker, 100 P.3d at 1058.

Because the constitutionality of aggravating factors is a question of law, Thacker must

demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of,

federal law as established by the United States Supreme Court. See United States v. McCullah, 76

F.3d 1087, 1107 (10th Cir. 1996); 28 U.S.C. § 2254(d)(1). He has failed to meet this burden. The

Tenth Circuit summarized its position on the constitutionality of Oklahoma's heinous, atrocious or

cruel aggravator in Workman v. Mullin, 342 F.3d 1100, 1115-16 (10th Cir. 2003), stating:

> We have repeatedly held that Oklahoma's current definition of "especially heinous, atrocious or cruel" aggravating circumstance is not unconstitutionally vague.
>
> Workman acknowledges that the Tenth Circuit has routinely upheld the constitutionality of this aggravating circumstance, see, e.g., Romano v. Gibson, 239 F.3d 1156, 1176 (10th Cir. 2001); Thomas v. Gibson, 218 F.3d 1213, 1226 (10th Cir. 2000); Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000); Moore v. Gibson, 195 F.3d 1152, 1175-76 (10th Cir. 1999); Smallwood v. Gibson, 191 F.3d 1257, 1274 (10th Cir. 1999); Hooks v. Ward, 184 F.3d 1206, 1239-40 (10th Cir. 1999); Foster v. Ward, 182 F.3d 1177, 1194 (10th Cir. 1999); Duvall v. Reynolds, 139 F.3d 768, 793 (10th Cir. 1998). Nevertheless, Workman attempts to find room for his argument that the aggravating circumstance is unconstitutionally vague in snippets of language from our cases such as a line from Thomas expressing doubt about blanket application of Oklahoma's early formulation and Judge Lucero's concurrence in Medlock. See generally Thomas, 218 F.3d at 1229 n.17 ("There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty."); Medlock, 200 F.3d at 1324 ("There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. Were this not so, the narrowing construction [that Oklahoma has given the aggravating circumstance] would not have the discretion-limiting effect required by [the Eighth Amendment].")(Lucero, J., concurring).
>
> Oklahoma, however, has limited application of the aggravating circumstance to only those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. Stouffer v. State, 742 P.2d 562, 563 (Okla. Crim. App. 1987). This limitation was included in the jury instructions in Workman's case. ROA Criminal Appeal, Original Record at 98, Instruction No. 3   penalty phase ("The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."). We have specifically found Oklahoma's new formulation to be constitutional since this limiting language was enacted. Hatch v. State, 58 F.3d 1447, 1468-69 (10th Cir. 1995); see also Duvall, 139 F.3d at 793.

<u>Workman</u>, 342 F.3d at 1115-16. Tenth Circuit precedent forecloses Thacker's argument that Oklahoma's heinous, atrocious or cruel aggravator is unconstitutional. Habeas relief is denied on this issue.

**VIII.   Accumulation of error (ground nine)**

Thacker next contends the cumulative impact of "numerous constitutional errors" entitles him to habeas relief. Dkt. # 16 at 74. Cumulative error analysis "merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1196 (10th Cir. 2006) (quoting <u>Workman</u>, 342 F.3d at 1116). The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. <u>Id.</u> Cumulative impact of non-errors is not part of the analysis. <u>Le v. Mullin</u>, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing <u>United States v. Rivera</u>, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having found only one constitutional error (ground six), which the Court found to be harmless, there is no basis for a cumulative error analysis. Thacker is not entitled to relief on this ground.

**IX.   Thacker cannot be executed due to incompetency (ground ten)**

In ground ten, Thacker claims he "may be incompetent to be executed at the time an execution date is set." <u>See</u> Dkt. # 16 at 101. Citing <u>Ford v. Wainwright</u>, 477 U.S. 399, 410 (1986), he argues that the United States Constitution forbids execution of insane persons. <u>Id.</u> at 100. Thacker acknowledges, however, that this issue is not ripe for review. Respondent agrees that presentation of the claim is premature (Dkt. # 30 at 109). A claim pursuant to <u>Ford</u> can be considered only when

the execution is "imminent." See Stewart v. Martinez-Villareal, 523 U.S. 637, 645 (1998). Because

Thacker's execution date has not been set and is not imminent, his tenth ground is premature.

## **CONCLUSION**

After careful review of the record in this case, the Court concludes that Steven Ray Thacker

has not established that he is in custody in violation of the Constitution or laws or treaties of the

United States.  His petition for writ of habeas corpus shall be denied.


**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.    Randall Workman is substituted for Marty Sirmons as the party respondent and the

       **Court Clerk is directed** to note such substitution on the record.

2.    Thacker's petition for habeas corpus relief, as amended (Dkt. ## 16, 36) is denied.

3.    A separate judgment shall be entered in this matter.


**DATED** this 2nd day of September, 2010.

_____

CLAIRE V. EAGAN

UNITED STATES DISTRICT JUDGE